IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, ALF-CIO, CLC, <br><br> Plaintiff, <br><br> v. <br><br> SAINT-GOBAIN NORTH AMERICA; SAINT-GOBAIN PERFORMANCE PLASTICS; SAINT-GOBAIN ABRASIVES; SAINT-GOBAIN CERMAICS & PLASTICS; AND CORHART REFRACTORIES, <br><br> Defendants. | CIVIL ACTION <br> NO. 26-3077 |

**<u>OPINION</u>**

**Scott, J.**                                                          **May 28, 2026**

## I.    INTRODUCTION

This case arises from a dispute over retiree healthcare benefits between a company and a union.  On March 2, 2026, Defendant Saint-Gobain North America ("SGNA") and its subsidiaries, including Saint-Gobain Performance Plastics, Saint-Gobain Abrasives, Saint-Gobain Ceramics & Plastics, and Corhart Refractories (collectively, "Defendants" or "Company") announced plans to change healthcare plans for retirees who worked at one of five of Defendants' facilities.  Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("Plaintiff" or "Union")—which represents current and former employees at each facility for purposes of collective bargaining—opposed the proposed change.  The change in retiree healthcare benefits is scheduled for June 1, 2026.

1

At each of the five facilities, Plaintiff negotiated a collective bargaining agreement ("CBA") with a subsidiary of SGNA.  Each CBA establishes a procedure for resolving "grievances," which are—at their core—"disagreements" or "disputes" over the terms of the CBA. After one party files a grievance, the counterparty may deny the grievance.  If the counterparty denies the filing party's grievance, the filing party may appeal that decision to an arbitrator, whose decision is binding.

After Defendants announced plans to change their provision of retiree healthcare plans in early March, Plaintiff filed grievances at each facility. The gist of Plaintiff's contention is that Defendants are violating the CBAs by unilaterally changing benefits.  At two facilities, Defendants denied Plaintiff's grievances, leading Plaintiff to appeal to an arbitrator.  At the other three facilities, Plaintiff "anticipates that [Defendants] will deny" the grievances on the same grounds they denied grievances at the first two facilities, which will lead Plaintiff to appeal to an arbitrator.

Because the current retiree benefit plans are set to expire on May 31, 2026, Plaintiff filed both a Complaint and a Motion for a Preliminary Injunction on May 6, 2026.  (Doc. Nos. 1, 2.)  In the Motion for Preliminary Injunction, Plaintiff requests the Court to enter the following Order:

> Defendants . . . are hereby ordered to cease implementing [their] announced unilateral changes to the retiree healthcare program and are ordered to maintain the current benefit program unchanged until the grievances referenced in Plaintiff's Complaint and Motion for Preliminary Injunction are resolved through arbitration.

(Doc. No. 2-1 at 1.)

On May 20, 2026, Plaintiff filed a Motion for a Temporary Restraining Order ("TRO"), which requests the same relief as the Motion for a Preliminary Injunction.  (See Doc. No. 11.)  On May 26, 2026, counsel for Defendants entered their appearance.  That same day, the Court[1] held

---

[1]    The case was originally assigned to Judge Joel H. Slomsky.  However, Judge Slomsky was

a telephone conference with counsel for the parties.  The next day, on May 27, 2026, Defendants filed their Response in Opposition to Plaintiff's Motions for a Preliminary Injunction and a TRO. (Doc. No. 15.)  The Motions for a Preliminary Injunction and a TRO are now ripe for disposition. For the reasons that follow, the Motions (Doc. Nos. 2, 11) will be denied.

## II.    BACKGROUND

Since 2019, Defendants offered "group sponsored Medicare Advantage Plans through Aetna and United Healthcare ("UHC") (collectively, "Group Plans") for eligible retirees, their spouses, and dependents."  (Doc. No. 15-17 at 1.)  If a retiree fit the eligibility criteria and was enrolled in Medicare, the Group Plans would provide them with prescription drug coverage.  (Id. at 2.)  According to Defendants, 65% of eligible retirees were enrolled in the Group Plans.  (Id.) However, due to the increasing costs of maintaining the Group Plans with Aetna and UHC, Defendants decided to change course.  (Id.)

The change in retiree benefit provisions has two components.  First, Defendants partnered with an online "Medicare Marketplace" called Via Benefits, which requires retirees to choose from a host of new Medicare supplement plans (collectively, "New Plans").  (Id. at 3.)  Second, Defendants would contribute $2,500 per person each year in a Health Reimbursement Account ("HRA"), which "can be used to reimburse eligible healthcare expenses and insurance premiums" incurred by retirees. (Id.)  On March 2, 2026, Defendants announced the proposed change, alerting retirees that (1) their Group Plans were set to expire on May 31, 2026, and (2) the New Plans would begin on June 1, 2026.  (Id. at 4.)  If a retiree failed to enroll by May 31, 2026, their supplemental healthcare coverage would lapse.

---

not in Chambers during the week of May 25, 2026.  As a result, Judge Kai N. Scott, sitting in an emergency capacity, is adjudicating the present dispute between the parties.  Judge Slomsky will remain assigned to the case and will adjudicate any future disputes beginning on June 1, 2026.

As of May 26, 2026, 90.5% of retirees who were enrolled in Group Plans had enrolled in New Plans through Via Benefits, and 5.6% of that same group "have either not responded to Via Benefits' outreach or have affirmatively declined enrollment." (Id. at 6.)

## III.    STANDARD OF REVIEW

A temporary restraining order and preliminary injunction are equitable remedies that preserve the status quo, defined as "the last, peaceable, noncontested status of the parties," while "the merits of the cause are explored through litigation." See Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004); J.O. v. Orange Twp. Bd. of Educ., 287 F.3d 267, 273 (3d Cir. 2002) (citation omitted). Injunctive relief—whether through a temporary restraining order or preliminary injunction—is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (citation omitted); see also Kos Pharmaceuticals, Inc., 369 F.3d at 708 ("Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'") (citation omitted).

Neither party disputes that the applicable standard in this case comes from Boys Markets, Inc. v. Retail Clerks Union, Loc. 770. See 398 U.S. 235 (1970). In that case, the Supreme Court permitted district courts to grant labor-related injunctions in cases when "necessary to force the parties to comply with a mandatory arbitration clause." Commc'ns Workers of Am., AFL-CIO v. Verizon Commc'ns, Inc., 255 F. Supp. 2d 479, 484 (E.D. Pa. 2003). To secure a Boys Market injunction, the moving party must demonstrate that the following three requirements are satisfied: (1) the underlying dispute is subject to mandatory arbitration; (2) the employer is frustrating the arbitration process; and (3) traditional considerations of equity weigh in favor of granting an injunction. See United Steelworkers of Am., AFL-CIO v. Fort Pitt Steel Casting, Div., 598 F.2d 1273, 1278–79 (3d Cir. 1979). Defendants do not dispute the first element.

Under Federal Rule of Civil Procedure 65, a temporary restraining order and a preliminary injunction are governed by the traditional considerations of equity. Zaslow v. Coleman, 103 F. Supp. 3d 657, 662 (E.D. Pa. 2015). Accordingly, a party is entitled to injunctive relief if it demonstrates (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. Child Evangelism Fellowship of N.J. v. Stafford Tp. Sch. Dist., 386 F.3d 514, 524 (3d Cir. 2004).

As the moving party, it is the Union's burden to introduce evidence with respect to the first two factors—i.e., likelihood of success on the merits and irreparable harm. Id. If the first two "gateway factors" are satisfied, "a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017). "All four factors should favor preliminary relief before the injunction will issue." S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir. 1992) (citation omitted).

## IV.    ANALYSIS

Defendants offer three reasons why the Court should not enter an injunction. First, they claim that the Court lacks jurisdiction to enter an injunction against one of the subsidiary Defendants, Saint-Gobain Abrasives, Inc. The remaining reasons, however, concern the applicability of Boys Market elements to any of the Defendants. Specifically, Defendants assert that the second element, which requires that the employer's actions are frustrating the arbitration process, is not satisfied here. Finally, Defendants contend that all four equitable factors considered under Rule 65 weigh against granting an injunction.

As a threshold matter, the Court will hold Defendant's jurisdictional argument in abeyance. At this stage, not enough is known about (1) the citizenship of Saint-Gobain Abrasives, Inc., or (2) whether the subsidiary is sufficiently close to its parent company to render personal jurisdiction appropriate here.  Similarly, the Court will not address the second disagreement between the parties, which concerns whether Defendants are frustrating the arbitration process.  Consequently, the Court will only address the third element of a Boys Market injunction, which considers the familiar four factors for granting an injunction under Rule 65.

As stated above, Plaintiff bears the burden of satisfying the first two "gateway" factors— namely, that (1) Plaintiff is likely to succeed on the merits, and (2) Plaintiff would suffer irreparable harm absent the injunction. See Reilly v. City of Harrisburg, 858 F.3d 173, 176 (3d Cir. 2017).  While the Court harbors doubts about whether Plaintiff has demonstrated its likelihood of success on the underlying contractual dispute, Plaintiffs' failure to demonstrate irreparable harm is most apparent from the record before the Court.  As a result, Plaintiff's request for injunctive relief will fail.

In arguing for irreparable harm, Plaintiff contends that the New Plans will not cover as many medications as covered under the Group Plans, forcing retirees to either "absorb major out-of-pocket expenses" or alter their medications. (Doc. No. 11-2 at 17.)  For this contention, Plaintiff relies on two declarations from retirees who are affected by Defendants' change in healthcare benefits.  One declaration, submitted by William Kuber, states that his diabetes medication will be significantly more expensive under a New Plan.  The second declaration, submitted by Mary Ellen Anderson, states that increases in her prescription drug costs would force her to change her medications, which may have adverse effects.  Additionally, Plaintiff argues that some retirees covered by Group Plans will fail to register for New Plans, resulting in a loss of any employer-

provided coverage.  Related to this concern, the same two declarants emphasize that picking an appropriate plan online is confusing and the reimbursement process for the new HRAs would also be difficult to navigate.

In Adams v. Freedom Forge Corp., 204 F.3d 475 (3d Cir. 2000), the Third Circuit provided guidelines for district courts analyzing the irreparable harm prong for injunctions affecting large classes of affected parties.  First, Adams states that "the risk of irreparable harm must not be speculative."  Adams, 204 F.3d at 488.  Second, a court should not rest its preliminary injunction "on the testimony of a few . . . in the absence of a foundation from which one could infer that all (or virtually all) members of a group are irreparably harmed."  Id. at 487.

With those guidelines in mind, Plaintiff's argument is unavailing for three reasons.  First, it is not clear that the New Plans—when combined with the HRA's provision of $2,500 per person—would be unable to cover prescription drug expenses.  Through many New Plans offered by Via Benefits, there would be an annual cap of $2,100 on out-of-pocket expenses.  Therefore, even if the New Plan results in costlier drugs compared to the Group Plans, HRA funds would likely be able to offset that cost.  While Mr. Kuber and Ms. Anderson have testified to increased prescription costs, their declarations do not state that the New Plan and HRA funds would be insufficient to cover those costs.  As compared to employees in two cases repeatedly cited by Plaintiff, retirees in this case do not face either (1) termination of all healthcare insurance benefits, see Fort Pitt, 598 F.2d at 1275, or (2) "drastic reduction in health insurance benefits and . . . wholesale wage cuts," see Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Exide Corp., 688 F. Supp. 174, 178 (E.D. Pa.).

Second, as of May 26, 2026, over 90.5% of the relevant retiree population has signed up for New Plans. Another 5.6% of that population "[has] either not responded to Via Benefits or [has] affirmatively declined enrollment." (Doc. No. 15-17 at 6.) Despite the understandable uncertainty that accompanied Mr. Kuber and Ms. Anderson's decisions to select a New Plan, Defendants reported that both declarants were able to successfully enroll in a plan. (Id.) Plaintiff fails to submit Declarations from bargaining unit retirees who are (1) eligible for a New Plan, (2) cannot obtain one, but (3) wish to secure a New Plan instead of securing healthcare from some other source, such as a spouse's coverage. As a result, any injunction entered on their behalf would be based on speculation.

Third, the two declarations in this case are inadequate to represent the hundreds of retirees who are affected by this change, especially given that the declarants do not purport to speak for other retirees in their bargaining unit. See Adams, 204 F.3d at 487. Though the Court sympathizes with Mr. Kuber and Ms. Anderson's reported "concern[s]," "fear[s]," "worr[ies]," "hassle[s]," and "anxiet[ies]" about Defendants' alteration of their benefits, an injunction must be based on more concrete ramifications. See id. at 490 ("As we have stated, injunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties.") (citation omitted).

In sum, Plaintiff has not carried its burden on irreparable harm, and, as a result, fails to demonstrate why a Boys Market injunction should issue in this case.

V.    CONCLUSION

For the foregoing reasons, Plaintiff's Motions for a Preliminary Injunction and a TRO (Doc. Nos. 2, 11) will be denied.

8